# COURT OF APPEALS OF VIRGINIA

## Record No. 1728-25-2

CHIDIMMA UWASOMBA

v.

HENRICO COUNTY DEPARTMENT OF SOCIAL SERVICES

Present: Chief Judge Decker, Judges Raphael and Frucci
Argued by videoconference

Opinion Issued July 7, 2026[*]

## FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Charles R. Samuels (Charles R. Samuels, Attorney at Law, PLLC, on brief), for appellant.

Audrey Burges (Stephanie S. Henkle, Guardian ad litem for the minor children; Henrico County Attorney's Office; Henkle Law Firm, on brief), for appellee.

## MEMORANDUM OPINION
## PER CURIAM

Chidimma Uwasomba (the mother) appeals the circuit court's order terminating her parental rights to her minor children under Code §§ 16.1-283(B) and (C)(2). She challenges both an earlier abuse-and-neglect dispositional hearing and the subsequent termination of her parental rights. The mother also alleges that the circuit court erred in failing to immediately appoint appellate counsel when her attorney withdrew at the end of the trial. For the following reasons, we hold the circuit court did not err and affirm the court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

The mother and Isaiah Bull (the father) are the biological parents of K.B., M.B., and M.U.[2] The children were four years old, two years old, and four days old when the Henrico County Department of Social Services (the Department) removed them from the mother's care.

The Department became involved with the family in 2020 after the mother alleged domestic abuse by the father. A pattern unfolded in which the mother repeatedly reported to the police that the father physically abused her but then allowed him to return home. In one of these instances, she reported that the father was also violent toward the children.

In February 2024, the father was arrested for domestic violence after the mother sustained injuries to her head and neck. When the police arrived, she shared a recording of the father threatening to kill her while the older children were present. The mother informed the Department that the children also had witnessed past incidents of violence. She reported that on one occasion, the children were present when the father sexually assaulted her. The mother also alleged that after the children heard the father threatening to "slit her throat," K.B. began "mimicking slitting his own throat."

The Department obtained a child protective order. The mother violated the order by allowing the father to talk to the children over the phone while he was incarcerated. She also intended to allow the father to return to their home upon his release. Concerned about the

---

[1] "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the [Henrico County] Department [of Social Services].'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). The record is sealed. We unseal only the specific facts stated in this opinion that are necessary to resolve the issues raised by the mother. The remainder of the record remains sealed. *See Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023). We refer to the children by their initials to protect their privacy.

[2] The circuit court terminated the father's parental rights. He did not appeal.

mother's ability or willingness to protect the children from domestic violence, the Department obtained an emergency order and removed K.B. and M.B. from her care on March 28, 2024. The mother was pregnant with M.U. at the time.

When the mother did not make a required court appearance related to the father's charges, he was granted bail. After his release, the father absconded.

M.U. was born in September 2024. The mother did not seem to understand the child's needs. She also told hospital staff that she had heard M.U. "crying in utero multiple times" and thought the child "m[ight] be a ghost of a deceased person that she knew." Based on the mother's history, the Department was concerned about her ability to protect the newborn, as well as about her own mental health. The Department removed the child from her custody four days after his birth.

The juvenile and domestic relations district court (JDR court) entered adjudicatory and dispositional orders finding abuse and neglect of K.B. and M.B. The circuit court held a hearing on the mother's appeal on November 12, 2024. The children's guardian ad litem (GAL) arrived late to the hearing, but the mother agreed to continue with the hearing in her absence. At the conclusion of the hearing, the circuit court affirmed the JDR court's abuse-and-neglect ruling.[3]

Following the children's removal, the Department referred the mother for a psychological evaluation and obtained funding for her to do so. The evaluating psychologist determined that the mother took no accountability for her actions, was unable to regulate her emotions, and could not express empathy for the children. She recommended that the mother undergo therapy with an emphasis on accountability, emotional regulation, and empathy. The psychologist also recommended that she engage in parental coaching.

---

[3] The record contains a transcript of the abuse-and-neglect hearing, but the dispositional orders are not included in the record.

The mother attended an intensive outpatient program, during which she was diagnosed with "Major Depressive Disorder and Unspecified Anxiety Disorder." The program recommended continued therapy and medication management. The mother took the prescribed medicine for thirty days but stopped because she was "not a firm believer [in] medication."

Regarding her therapy, the mother chose her own provider for counseling. That counselor did not focus on the goals set by the Department, and the Department received only one communication from her. That communication was in the form of a letter representing that the mother stated the children did not witness domestic violence. The Department was also unable to obtain the mother's records from her counselor.

The Department referred the mother for parental coaching to help her "understand[] . . . the impact of the domestic violence the children had witnessed on their well-being." While the mother attended some parental coaching sessions, she failed to complete the program.

With the goal of returning the children to the mother's care, the Department arranged supervised visitation for the mother and the children. During some of those visits, she had altercations with the Department staff in front of the children. On one occasion, she argued with a Department employee while holding the youngest child. She also threatened to run away with the children, encouraged a child to make an abuse allegation against a foster parent, and told the children that they could return to her if they burned down their foster parents' home. The Department suspended the visitation because it negatively impacted the children.

The mother did not seem to understand why her children had been removed from her care. She did not believe that the children were negatively impacted by witnessing domestic violence. She demanded many times a week by email that the children be returned to her. Her erratic emails included threats and insults to Department employees.

- 4 -

The Department investigated placing the children with relatives but determined that no suitable relatives were available. Although the children's paternal grandmother initially expressed interest in taking the children, she did not "follow through." The children's maternal grandmother was not an option because she lived with the mother and was in poor health. Ultimately, the children were placed in foster care.

All three children adjusted well to foster care. K.B. and M.B. lived in the same foster home. K.B. received counseling and therapy to help him address sexualized and aggressive behavior. He attended preschool, made friends, and engaged well with his foster family. M.B. also had behavioral issues that were addressed through counseling and therapy. He attended camp and developed a close relationship with the foster family. M.U. developed well and met milestones while in foster care.

The Department determined that the mother was unable to care for all three children and that she failed to remedy the circumstances that led to their foster care placement. Although the mother completed some of the required services, she continued to claim that she had done nothing wrong and did not understand why the children were removed from her care. Importantly, the Department found that the mother failed to show any improvement in her capacity to protect the children. M.U. was younger than his siblings and had not witnessed any violence, but the Department determined that termination was necessary due to concerns about both the mother's capacity to protect him and her own mental health.

Ultimately, the Department petitioned to terminate the mother's parental rights and to change the foster care goal to adoption. The JDR court terminated the mother's parental rights to all three children.

After the JDR court terminated her parental rights, the mother contacted the Department and claimed that she had experienced a "lightbulb moment" and that she would engage in

services.  But she also stated that she was going to sue the Department and have Department employees fired.  The mother "continued to show that she did not have any insight into why the Department was involved" with the family.

The mother appealed the terminations to the circuit court.  After an August 14, 2025 hearing, the circuit court terminated the mother's parental rights.  It found that K.B. and M.B. had witnessed domestic violence for years but the mother never removed them from the situation and denied the negative impact that witnessing the violence had on them.  The court also noted that the mother lied about the children's presence when the domestic violence occurred and her relationship with the father.  It expressed concern about the mother's willingness to keep the father away from the children especially since the father remained a fugitive.  The court concluded that the termination was justified by the children's need for finality.

After the circuit court issued its ruling, the mother's counsel stated that she would not appeal the case to this Court.  The court permitted counsel to withdraw.

The circuit court entered final orders terminating the mother's parental rights to the three children under Code §§ 16.1-283(B) and (C)(2).  The mother, *pro se*, noted a timely appeal, and the court subsequently appointed her appellate counsel.[4]

ANALYSIS

I.  Abuse-and-Neglect Hearing

The mother contends that the circuit court erred in failing to continue the November 12, 2024 abuse-and-neglect hearing when the children's GAL was not present.

---

[4] In this Court, the mother's appointed counsel filed an opening brief, and the mother filed a *pro se* supplemental brief.  Her attorney's opening brief "adopt[ed] her assignments [of error] and arguments" "[t]o the extent allowed under the Rules of the Supreme Court of Virginia."

The abuse-and-neglect hearing was an entirely separate proceeding resulting in a separate final order. The mother could have appealed that order but did not do so. *See* Code § 16.1-278.2(D). As the mother did not note an appeal of the abuse-and-neglect dispositional order, we have no jurisdiction to address any errors alleged to have occurred in that proceeding. *See Ghameshlouy v. Commonwealth*, 279 Va. 379, 390 (2010) (explaining that "a timely notice of appeal is a mandatory prerequisite" for an appellate court to exercise jurisdiction); *accord Johnson v. Commonwealth*, 1 Va. App. 510, 512 (1986); Rule 5A:6(a) ("[N]o appeal will be allowed unless, within 30 days after entry of final judgment or other appealable order or decree, or within any specified extension thereof granted by this Court . . . counsel files with the clerk of the trial court a notice of appeal.").

For this reason, we have no jurisdiction to consider this assignment of error.

## II. Relative Placement

The mother argues that the circuit court erred by failing to make a finding on whether the Department made reasonable efforts to locate relatives as a potential placement for the children.

The mother did not make this argument in the circuit court. "No ruling of the [circuit] court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Under the rule, "[i]f a party fails to timely and specifically object, he waives his argument on appeal." *Harless v. Williams*, 84 Va. App. 242, 258 (2025) (quoting *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022)). "If [the] opportunity [to address an issue] is not presented to the [circuit] court, there is no ruling by th[at] . . . court on the issue, and thus no basis for review or action by this Court on appeal." *Id.* (first and second alteration in original) (quoting *Hawkins v. Town of South Hill*, 301 Va. 416, 434 (2022)). "The main purpose of requiring timely specific objections is to afford the [lower] court an opportunity to rule intelligently on the issues

- 7 -

presented, thus avoiding unnecessary appeals and reversals." *Milam v. Milam*, 65 Va. App. 439, 464 (2015) (quoting *Weidman v. Babcock*, 241 Va. 40, 44 (1991)); *see Bethea v. Commonwealth*, 297 Va. 730, 743-44 (2019). Additionally, "a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding." *Milam*, 65 Va. App. at 464-65 (quoting *Weidman*, 241 Va. at 44).

By failing to raise this challenge below, the mother did not preserve it for appellate review. Although Rule 5A:18 contains exceptions, the mother has not raised them here, instead contending that she preserved her argument about relative placement. We do not consider the exceptions sua sponte. *See Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

For these reasons, we do not address the mother's claim that the Department improperly failed to explore the possibility of placing the children with a relative.

### III. Appointment of Appellate Counsel

The mother argues that the circuit court erred in permitting trial counsel to withdraw at the end of the hearing without immediately appointing new counsel. She contends this delay violated her due process rights.

"An action that involves a live controversy at its inception may become moot during the course of litigation." *Berry v. Bd. of Supervisors*, 302 Va. 114, 129 (2023). "Regardless of how 'it may have come about,' a determination that a claim is moot because it is no longer possible to grant the requested relief 'deprives [a court] of [its] power to act; there is nothing for [it] to remedy, even if [it] were disposed to do so.'" *Id.* at 130 (alterations in original) (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998)).

After the mother timely noted her appeal, the circuit court appointed her new counsel. Appellate counsel filed a timely brief on the mother's behalf and presented arguments—written and

orally—that we address in this opinion. As there is no relief we can grant related to the claim of delay in appointing appellate counsel, this issue is moot. *See id.* at 129.

## IV. Termination of Parental Rights

The mother argues that the circuit court erred by terminating her parental rights because the Department failed to establish by clear and convincing evidence that she had not rectified the circumstances that led to the children's foster-care placement.

"On review of a [circuit] court's decision regarding the termination of parental rights, we presume th[at] . . . court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). As a result, we review such a decision for an abuse of discretion. *Id.*

"A circuit court's discretionary authority means it 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* (quoting *Everett v. Tawes*, 298 Va. 25, 40 (2019)). The "bell-shaped curve of reasonability governing . . . appellate review" under an abuse-of-discretion standard "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Qiu v. Huang*, 77 Va. App. 304, 328 (2023) (alteration in original) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). And when a "court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Here, the circuit court terminated the mother's parental rights under Code § 16.1-283(C)(2). The inquiry under this subsection "hinge[s] not so much on the magnitude of the

problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). To establish that termination of parental rights is warranted under Code § 16.1-283(C)(2), "three separate" determinations must be proved "by clear and convincing evidence." *See Joyce*, 75 Va. App. at 701. First, the court must find that the termination of parental rights is in the best interests of the child. Code § 16.1-283(C); *Joyce*, 75 Va. App. at 701. The second determination "relates to the . . . remedying of the conditions that led to foster care." *Richmond Dep't of Soc. Servs. v. Crawley*, 47 Va. App. 572, 579 (2006). For this factor to support termination, the circuit court must find as follows:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement . . . .

Code § 16.1-283(C)(2). Third, the court must find "that the Department made reasonable and appropriate efforts to help the parent remedy those conditions." *Joyce*, 75 Va. App. at 701; *accord* Code § 16.1-283(C)(2).

The mother challenges the second determination, arguing that the circumstances that led to the children's placement in foster care—the domestic violence—"was rectified."[5] She also claims that she satisfied the Department's requirements by participating in parental coaching, visitation, counseling, and therapy.

The Department became involved due to the father's domestic violence against the mother. Although the father was repeatedly violent, after each occurrence, the mother permitted him to

---

[5] She does not contest the circuit court's findings related to the best interests of the children or the reasonableness of the Department's efforts.

return home to her and the children. In March 2024, after around *four years* of intermittent domestic violence, the Department removed M.B. and K.B. from the mother's care. In September 2024, it removed newborn M.U. from her care. The primary circumstance triggering the removal was the mother's inability or unwillingness to protect her children from exposure to domestic violence. The Department also based the removals on concerns related to the mother's mental health. The circuit court specifically found that the mother failed to substantially remedy these conditions. The record contains clear and convincing evidence supporting these findings.

Related to the mother's ability or willingness to shield the children from exposure to domestic violence, the Department sought to teach her about the impact of such exposure on the children and for her to take responsibility for her actions. To help her achieve these goals, the Department instructed the mother to see a Department-recommended therapist. Instead, the mother saw a therapist of her own choosing and misrepresented to that therapist that her older children had not witnessed any domestic violence. In addition, the mother continued to claim that she had done nothing wrong and did not demonstrate any improvement in her ability to protect her children. The Department also sought to have the mother demonstrate appropriate parenting practices. To this end, it ordered her to receive parental coaching. The mother participated in some parental coaching sessions, but she did not successfully complete the program.

Related to the mother's mental health, the Department sought to have her address her own trauma from domestic violence and learn to regulate her emotions. To help her achieve those goals, the Department offered mental health counseling, medication management, and outpatient therapy. The mother underwent a psychological evaluation but did not follow the resulting recommendations. The mother attended an outpatient program, during which she was diagnosed with "Major Depressive Disorder and Unspecified Anxiety Disorder." The treating doctor recommended medication management and continued therapy. The mother received a prescription

medication to improve her mental health but decided to stop taking it. Although the mother saw her own therapist, the Department had limited communication with her provider and so was unable to determine the extent of any progress she made.

Nor did the mother demonstrate any improvement in her emotional regulation. Instead, she displayed emotional dysregulation during her visitation with the children. The mother's erratic behavior during those visits negatively impacted the children, causing the Department to suspend visitation. She also demonstrated emotional outbursts in her voluminous emails to Department staff. Even while claiming an epiphany and a willingness to engage in services, she threatened to sue the Department and have Department employees fired.

In finding that the mother had not substantially remedied the conditions leading to the children's removal from her care, the circuit court emphasized that she had discounted any lasting harm to the children, lied to her therapist that the older children had not witnessed domestic violence, and refused to take any responsibility for her actions. Based on the mother's history with the father and her unwillingness to accept that she had failed her children by not protecting them from exposure to domestic violence, the court expressed concern that the father remained a fugitive and could reenter the family's life. And the circuit court noted the mother's inability to regulate her emotions, finding her problem went beyond the stress of losing her children.

At the time of the circuit court hearing, the older children had been in foster care for approximately seventeen months and the youngest child since his birth eleven months earlier. Even after that passage of time, the mother had not remedied the circumstances that led to the children's placement in foster care. The Department's evidence was that the mother had not made any progress toward achieving the goals it had set. *See Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 339 (2013) ("This Court is bound by the credibility findings of the circuit court."). The Department "is not required to force its services upon an unwilling . . . parent." *Id.* at 323.

On this record, the circuit court did not err in finding that the mother had not substantially remedied the circumstances that led to the children's removal from her care.  As a result, the record supports the circuit court's decision to terminate her parental rights under Code § 16.1-283(C)(2).[6]

CONCLUSION

We have no jurisdiction to consider the mother's challenge to the abuse-and-neglect proceeding.  Additionally, Rule 5A:18 bars consideration of the mother's assignment of error related to placement of the children with a relative.  The issue regarding the appointment of appellate counsel is moot.  Finally, the circuit court did not err in finding that the mother failed to substantially remedy the circumstances that led to the children's removal from her care.  For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[6] The mother also disputes the circuit court's findings under Code § 16.1-283(B).  "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018).  Having found that the circuit court did not err in terminating the mother's parental rights under Code § 16.1-283(C)(2), we need not address whether her parental rights were also subject to termination under Code § 16.1-283(B). *See Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 and declining to address termination of parental rights under another subsection).